**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dale Gorney, | No. CV-18-00531-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Veterans Administration, et al., | |
| Defendants. | |

Before the Court is Defendants' Veterans Administration, Dr. John Lees, and Dr. Christopher Mullen, Motion for Summary Judgment (Doc. 49). For the following reasons, the Motion is GRANTED in its entirety, and Plaintiff's claims are DISMISSED. The Clerk of Court is directed to close this case.

**JURISDICTION**

The Court exercises federal question jurisdiction over this matter under 28 U.S.C. § 1331, as it has original jurisdiction of all civil actions arising under the Constitution or laws of the United States. Venue in the U.S. District Court for the District of Arizona, Tucson Division, is appropriate under 28 U.S.C. § 1391(b)(2) and LRCiv 77.1(c), as a substantial part of the events giving rise to the claims occurred in Pima County, Arizona.

**BACKGROUND[1]**

Since the 1980's, Plaintiff Dale Gorney has had problems with torn cartilage in his

---

[1] The information in the background section is taken from Defs.' Statement of Facts re: Mot. for Summ. J. (Doc. 45) and is construed in the light most favorable to Plaintiff.

left knee. (Pl.'s Tr. pp. 6-7[2]) The pain associated with his knee became so severe that, in the mid-1990's, Plaintiff underwent arthroscopic surgery. *Id.*, p. 7. While his injury healed after surgery, Plaintiff has taken various prescriptions and over-the-counter pain relievers to deal with pain associated with his knee ever since. *Id.*, pp. 21-22. Those prescription medications have included alprazolam, opioids tramadol and Vicodin, and over-the-counter ibuprofen and Tylenol. *Id.* Beginning in April 2014, Plaintiff has attended the Southern Arizona Veterans Administration Health Care System ("VA") to address his medical needs. (Doc. 29 at 5)

Sometime in 2016 or 2017, Plaintiff began seeing a new primary care physician at the VA by the name of Dr. Christopher Mullen. (Doc. 45-2, ¶ 5 at 3) Dr. Mullen was concerned that the mix of medications Plaintiff was taking—two opiate-based pain medications and one benzodiazepine—was unsafe despite Plaintiff's assertions that they provided the best combination for pain relief. *Id.*, ¶ 7; Doc. 29 at 5.

In December 2017 or January 2018, Dr. Mullen decided, with Plaintiff's initial acquiescence, to lower the dosage of Plaintiff's Vicodin prescription, as Plaintiff was taking Vicodin on an as-needed basis and using tramadol as his primary pain medication (up to four times per day) (Doc. 45-2, ¶¶ 6-8 at 3) Dr. Mullen states Plaintiff was gradually weaned off his Vicodin prescription, which went from 45 tablets per month to 10 tablets per month. *Id.* Plaintiff, however, alleges Dr. Mullen abruptly discontinued his prescription altogether and that Dr. Mullen refused to issue any refills. (Doc. 29 at 5) Plaintiff contends that Dr. Mullen's refusal to refill his Vicodin prescription violates federal law. *Id.*

Plaintiff also asserts that the VA's policy of requiring mandatory urinalysis tests to patients receiving opioid prescriptions infringes on his right to be free from involuntary searches and seizures. *Id.* at 1. Plaintiff seeks injunctive relief from the Court via an order instructing the VA to continue his Vicodin prescription at 30 tablets per month. *Id.* at 7. Plaintiff also argues that the VA has violated his substantive due process rights, as he

---

[2] Excerpts from Plaintiff's transcript can be found at (Doc. 45-4 at 1-9), and are abbreviated as ("Pl.'s Tr. pp. _ ).

contends that he has a protected property interest in the continued use of his Vicodin prescription. *Id.* Finally, Plaintiff asserts that the Federal Controlled Substances Act of 1970, which he believes is restricting his and other citizens' access to competent pain management, is unconstitutional. *Id.* at 6.

## PROCEDURAL HISTORY

On August 2, 2019, Plaintiff filed his amended complaint, which outlined four causes of action against Defendants. Those claims include: (i) a Fourth Amendment claim to be free from unreasonable searches and seizures; (ii) a claim under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); (iii) a claim for violation of Plaintiff's substantive due process rights; and (iv) a challenge to the constitutionality of the Federal Controlled Substances Act of 1970, 21 U.S.C. § 811 *et seq.* On August 16, 2019, Defendants filed their answer. On February 21, 2020, Defendants requested leave to file their Motion for Summary Judgment; and on February 27, 2020, the Court granted leave and entered Defendants' Motion. On April 20, 2020, the Court issued an Order that instructed Plaintiff to file a response to Defendants' summary judgment motion by May 22, 2020. To date, Plaintiff has failed to respond. This Order follows.

## LEGAL STANDARD

Summary judgment is appropriate if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of informing the court the basis for its motion "and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). Once the moving party has met its burden, the opposing party must go beyond the pleadings and set forth "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

"If a party . . . fails to properly address another party's assertion of fact[s] . . . , the court may . . . grant summary judgment if the motion and supporting materials—including

the facts considered undisputed—show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e)(3). "The party opposing [a summary judgment] motion is under no obligation to offer affidavits or any other materials in support of its opposition. Summary judgment may be resisted and must be denied on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Where a response to a motion for summary judgment is not filed, the motion should nonetheless be denied "where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact." *Id.* at 949 (citation omitted).

## ANALYSIS

In their Motion for Summary Judgment, Defendants argue that summary judgment should be granted in their favor because Title II of the ADA does not apply to the federal government; a Rehabilitation Act claim cannot be based on a reasoned medical treatment decision; Plaintiff does not have a constitutionally protected liberty interest in his opiate-based prescription; Plaintiff lacks standing to challenge the constitutionality of the Federal Controlled Substances Act; and the VA's urinalysis requirement for opioid prescription recipients is reasoned and justified. The Court addresses Plaintiff's claims in the order in which they are presented in his amended complaint.

### I. Urinalysis is Reasonable Search

Plaintiff begins his amended complaint by alleging that his rights under the Fourth Amendment to the Constitution are being violated because the VA now requires mandatory urinalysis tests every 90 days and face-to-face visits with a primary care physician to dispense Class IV controlled substances, which includes his tramadol prescription. (Doc. 29 at 1) Plaintiff also states that the urinalysis is used to detect illicit drugs, and he questions whether such screening is necessary. *Id.*

In response, Defendants argue that the VA's mandatory urinalyses for opiate-based pain medication recipients is less intrusive and more important than other urine drug screens upheld by the Supreme Court. (Doc. 49 at 9) Defendants also assert that like high

school athletes, opiate-based medication recipients have reason to expect certain intrusions upon their privacy considering that physicians conduct routine examinations, discuss sensitive medical issues, and order revealing diagnostic tests. *Id.* at 10.  Defendants declare that deterring the misuse of opioids is an important governmental concern and that urinalyses effectively address this concern. *Id.*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV.  "The touchstone of [the Supreme Court's] analysis under the Fourth Amendment is always the reasonableness . . . of the particular governmental invasion of a citizen's personal security." *United States v. Kincade*, 379 F.3d 813, 821 (9th Cir. 2004) (quotation marks omitted) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977)).  The determination of reasonableness requires balancing the need to search against the invasion which the search entails. *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985).  "On one side of the balance are arrayed the individual's legitimate expectations of privacy and personal security; on the other, the government's need for effective methods to deal with breaches of public order." *Id.*

"Ordinarily, the reasonableness of a search depends on governmental compliance with the Warrant Clause[;]" however, "[t]he Court has also sanctioned . . . general search regimes that are free from the usual warrant-and-probable cause requirements." *Kincade*, 379 F.3d at 822.  One such regime is commonly referred to as "special needs" searches. *Id.* at 823. Special needs searches are "conducted for important non-law enforcement purposes in contexts where adherence to the warrant-and-probable cause requirement would be impracticable." *Id.*  In the context of a special needs search, courts balance the intrusion on the individual's Fourth Amendment interests against the promotion of legitimate governmental interests. *Vernonia Sch. Dist. 47 J v. Acton*, 515 U.S. 646, 652-53 (1995).  The Ninth Circuit instructs that a special needs analysis involves two steps: "(1) determining whether the government has articulated a valid special need; and, (2) analyzing whether the proposed administrative search is justified in light of that articulated

special need." *Sanchez v. Cnty. of San Diego*, 464 F.3d 916, 925 (9th Cir. 2006) (quotation marks and citation omitted).

Defendants do not contest the fact that they are governmental actors subject to the strictures of the Fourth Amendment. Nor do they challenge Plaintiff's conclusion that urinalyses conducted by the VA are searches within the meaning of the Fourth Amendment. *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 617 (1989) ("[T]he collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable[.]"). Instead, Defendants argue that since the drug screen's intrusion into Plaintiff's privacy interest is minimal and that the basis behind the urinalysis—deterring the misuse of opioids— serves a special need, the search is justified.

In *Chandler v. Miller*, 520 U.S. 305 (1997), the Supreme Court analyzed whether a state law requirement that candidates for state office pass a drug test was warranted by the alleged incompatibility of unlawful drug use with holding high state office. It observed:

> Our precedents establish that the proffered special need for drug testing must be substantial—important enough to override the individual's acknowledged privacy interest, sufficiently vital to suppress the Fourth Amendment's normal requirement of individualized suspicion.
> . . . .
> A demonstrated problem of drug abuse, while not in all cases necessary to the validity of a testing regime, would shore up an assertion of special need for a suspicionless general search program. Proof of unlawful drug use may help to clarify—and to substantiate—the precise hazards posed by such use.

520 U.S. at 318-19 (citations omitted).

Defendants' identified special need—deterring the misuse of opioids—equates to the programmatic purposes of preventing opioid addiction and overdoses resulting in death (Doc. 45-6 at 4); reducing immunity to long-term opioid medication, opioid dependence, and the side effects associated with low doses of opioids, *id.* at 4-5; preventing the use of opioids with benzodiazepines, *id.* at 5; treating pain with safer alternative medical care, *id.* at 5-7; and following state and medical guidelines on the issuance of opioid prescriptions (Doc. 45-5 at 2-5). As such, the Court finds that Defendants have sufficiently articulated

a valid special need.

The Court also finds that the urinalyses performed by the VA, which are tailored to detect the misuse of opioids and the presence of other opioids or illegal drugs (Doc. 45, ¶ 18 at 4), are justified by Defendants' articulated special need. In coming to this conclusion, the Court notes that the Supreme Court has determined that the collection of urine in a physician's office is relatively noninvasive. *See Chandler*, 520 U.S. at 318 ("[T]he testing method the Georgia statute describes is relatively noninvasive[:] . . . The State permits a candidate to provide the urine specimen in the office of his or her private physician; and the results of the test are given first to the candidate, who controls further dissemination of the report.") Additionally, as Defendants highlight, the results of the urinalyses are made available only to other VA physicians and are not used for law enforcement purposes or to inform the patient's employer. *Id.*, ¶ 19.

In *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989), the Supreme Court addressed whether drug and alcohol testing by the Federal Railroad Administration violated the Fourth Amendment rights of railroad employees. In concluding the tests failed to violate the employees' rights, the Court determined, "[i]n limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion." 489 U.S. at 624. The same is true of the searches in question here. Accordingly, Defendants' Motion concerning Plaintiff's Fourth Amendment claim is GRANTED, and the claim is DISMISSED.

**II.    The ADA Does Not Apply to the Federal Government**

Plaintiff next contends that since his primary care physician abruptly discontinued his Vicodin prescription without his consent, a violation of Title II of the ADA has occurred. (Doc. 29 at 4) In response to Plaintiff's allegation, Defendants argue that summary judgment should be granted in their favor because the Act does not apply to the Federal Government. (Doc. 49 at 4) In the alternative, Defendants argue that even if the

Court construes Plaintiff's claim as one under the Rehabilitation Act of 1973 ("RA"), it still must be rejected because Plaintiff fails to demonstrate that he was denied his prescription *because of his disability*. *Id.* at 5-6.

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); *Weinrich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). "To prevail under Title II, the plaintiff must show that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) this exclusion, denial, or discrimination was by reason of his disability." *Cohen v. Culver City*, 754 F.3d 690, 695 (9th Cir. 2014) (citation omitted). Section 504 of the RA "is materially identical to and the model for the ADA, except that it is limited to programs that receive federal financial assistance[.]" *Armstrong v. Davis*, 275 F.3d 849, 862 n.17 (9th Cir. 2001) (quotation marks and citation omitted) *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

Title II of the ADA defines a "public entity" as "any State or local government" and "any department . . . of a State or States or local government." *Id.* § 12131(1). This Court has determined that the Federal Government, which includes federal agencies, is excluded from the definition of a public entity under the ADA. *See Bauerle v. U.S. Dep't of Health & Human Servs.*, No. CIV 12-532-TUC-CKJ, 2013 WL 6670321, at *4 (D. Ariz. Dec. 18, 2013) (finding "under Title II, the federal government is not included within the definition of a public entity[,]" and "Title III of the ADA does not apply to public entities"); *see also Cellular Phone Taskforce v. FCC*, 217 F.3d 72, 73 (2d Cir. 2000) (holding that the FCC cannot be liable under Title II of the ADA because Title II does not apply to the Federal Government). The Court is unaware of, and Plaintiff fails to offer, any new caselaw that dictates otherwise. Accordingly, Defendants' Motion concerning Plaintiff's ADA claim is GRANTED, and the claim is DISMISSED.

### III. Plaintiff Fails to Demonstrate Causation under the RA

To the extent Plaintiff attempts to bring a discrimination claim under the RA, that claim also fails. In *Lane v. Pena*, 518 U.S. 187 (1996), the Supreme Court ruled that the Federal Government is immune to awards of monetary damages for violations of Section 504 of the Rehabilitation Act.  In terms of a disability discrimination claim for injunctive relief, Plaintiff fails to demonstrate he was denied his Vicodin prescription *because of* his disability.

In the absence of pertinent Ninth Circuit caselaw on the issue, the Court relies on the Second Circuit's decision in *McGugan v. Aldana-Bernier*, 752 F.3d 224 (2d Cir. 2014) to support its decision to dismiss Plaintiff's claim. In *McGugan*, the Second Circuit addressed a plaintiff's claim that a psychiatric hospital discriminated against her through disability stereotyping.  In affirming the district court's dismissal of the claim, the court reasoned:

> A doctor who administers a medical treatment to a patient (or withholds it) because the doctor's medical training leads her to conclude that the treatment is medically appropriate (or inappropriate) is practicing [a] benign form of discrimination. This is true even if the doctor's medical understanding is flawed and her knowledge is deficient. On the other hand, a doctor who inflicts or withholds a type of medical treatment for reasons having no relevance to medical appropriateness—reasons dictated by bias rather than medical knowledge—is practicing [a] pejorative form of discrimination. It is clear that the intention of the Rehabilitation Act in prohibiting discrimination is to prohibit the pejorative, and not the benign, form. Thus a doctor may refuse to prescribe a particular treatment, which the disabled patient has requested, because of the doctor's assessment (based on an appraisal of the patient's medical condition) that the treatment would be harmful. The doctor's refusal is not discrimination in violation of the statute, even if the doctor's medical analysis is flawed. Such a decision may be malpractice, but it is not discrimination. Section 504 does not authorize a claim for malpractice.

752 F.3d at 231–32 (citation omitted).

In the case at hand, Dr. Mullen reduced Plaintiff's Vicodin prescription for medical reasons. *See* Doc. 45-2 at 2-4. Dr. Mullen attests that the reduction of Plaintiff's

prescription was due, in part, to the fact that Plaintiff was mixing two opiate-based pain medications (tramadol and Vicodin) and one benzodiazepine (alprazolam)—which was not a good mix. *Id.*, ¶ 7 at 3. He also testifies that he decided to wean Plaintiff off of Vicodin because Plaintiff was only taking the prescription as needed and tramadol was Plaintiff's primary pain medication. *Id.*, ¶ 8. Dr. Mullen adds that Plaintiff has failed to follow his medical advice regarding pain medication, which has resulted in ulcers and esophagitis due to Plaintiff's misuse of anti-inflammatory drugs such as ibuprofen and naproxen. *Id.*, ¶ 9.

Plaintiff fails to establish a genuine issue of material fact by neglecting to challenge Dr. Mullen's medical assertions concerning his decision to wean Plaintiff off of Vicodin. He also fails to demonstrate that Dr. Mullen's medical decision was instead related to Plaintiff's alleged disability. Accordingly, Defendants' request to reject Plaintiff's RA claim is GRANTED, and the claim is DISMISSED.

### IV. Plaintiff Fails to Establish Property Interest in Prescription

In his amended complaint, Plaintiff insinuates that he has a constitutionally protected property interest in maintaining his Vicodin prescription. (Doc. 29 at 6) Defendants argue that Plaintiff not only fails to demonstrate a recognized property interest in prescription medication, but he also fails to establish that Dr. Mullen's conduct was constitutionally arbitrary. (Doc. 49 at 7) As such, Defendants argue, summary judgment should be granted in their favor. *Id.*

"Substantive due process is ordinarily reserved for those rights that are 'fundamental.' " *Brittain v. Hansen*, 451 F.3d 982, 990 (9th Cir. 2006) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721-22 (1997)). "[It] protects individuals from arbitrary deprivation of their liberty by government." *Brittain*, 451 F.3d at 991 (citation omitted). Substantive due process analysis entails two elements. First, a plaintiff must demonstrate a government deprivation of life, liberty, or property. *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Second, whether substantive due process is violated turns on the nature of the challenged government conduct. *Cancino Castellar v. McAleenan,* No. 17-CV-491-BAS-AHG, 2020 WL 1332485, at *5 (S.D. Cal. Mar. 23, 2020). To

constitute a violation of substantive due process, the alleged deprivation must "shock the conscience and offend the community's sense of fair play and decency." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012).

Plaintiff's substantive due process claim fails in two areas. First, Plaintiff fails to identify a recognized property interest in prescription medication. In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), the Supreme Court analyzed constitutionally protected property interests in detail. It ruled:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it . . . . Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577.

Plaintiff also fails to elucidate any state law which confers on him, or any other citizen, an unfettered right to opiate-based pain medication. Two circuit courts of appeals have determined individuals lack similar rights. *See Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997) ("After careful review of both of the statutes offered by the plaintiff, we conclude that the plaintiff lacks a substantive property right in his medication."); *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) ("[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary.").

Second, Plaintiff fails to identify governmental behavior that shocks the conscience and offends the community's sense of fair play and decency. Dr. Mullen's determination to wean Plaintiff off of Vicodin does not rise to that level of behavior. Rather, it appears that Dr. Mullen was adhering to state law and institutional guidelines by refusing Plaintiff an opiate-based prescription based on Plaintiff's non-compliance with the VA's various opioid prescription requirements and his disregard of sound medical advice. *See e.g.*,

Doc. 51 at 15 ("Patient still taking over the counter nsaids.[3] Discussed with the patient at length that he should avoid nsaids and to especially avoid them when he has stomach pain."); *id.* at 18 ("Patient is requesting a refill of his tramadol. Please let him know that the state of Arizona requires that we have the results of the urine drug screen at least every 90 days before we can fill controlled substances. He needs to get his labs before I can refill his prescription.").

Accordingly, Defendants' summary judgment motion concerning Plaintiff's substantive due process claim is GRANTED, and the claim is DISMISSED.

### V.     Plaintiff Lacks Standing to Challenge Controlled Substances Act

Plaintiff's final claim is that the Controlled Substances Act of 1970 ("CSA"), is unconstitutional. (Doc. 29 at 5-6) Plaintiff alleges the CSA is unconstitutional, in part, because it "is not in the public's interest for the people of the United States who suffer from chronic (long term) pain, and [that] the CSA all but blocks access to the people's right to civilized, competent[,] pain management." *Id.* at 6. Plaintiff also states that the "CSA medication class system is unconstitutional because it violates the medical necessity . . . for these medications." *Id.*

In response to Plaintiff's claim, Defendants assert that Plaintiff lacks standing to challenge the constitutionality of the Act because there is no fairly traceable connection between the CSA and Plaintiff's alleged injury, which is the loss of his Vicodin prescription. (Doc. 49 at 8) Defendants add that, even if Plaintiff had standing to challenge the Act, his claim would still fail because Plaintiff has not articulated a valid legal theory for why the CSA is unconstitutional. *Id.*

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citation omitted).

---

[3] "[A] nonsteroidal anti-inflammatory drug (such as aspirin and ibuprofen)." *NSAID*, *merriam-webster.com*, https://www.merriam-webster.com/dictionary/NSAID (last visited Sept. 10, 2020).

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court thoroughly addressed the prerequisites of standing. It declared:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.] Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

504 U.S. at 560–61 (quotation marks and citations omitted).

Here, it is entirely speculative that the CSA has anything to do with Dr. Mullen's decision to wean Plaintiff off of Vicodin. In fact, Dr. Mullen testifies that his reasons for weaning Plaintiff off the drug were purely medical, including the fact that there can be serious health consequences in mixing opiates with benzodiazepines; and due to the fact that Plaintiff was taking another opiate-based pain medication (tramadol) on a daily basis. Pared down to its basic elements, Plaintiff's complaint is not that he was denied the use of opioid pain medication, it is that he was denied his *preferred* opiate-based medication regimen, which—until Dr. Mullen interceded—included the use of two opioids. Because Plaintiff fails to create a genuine issue of material fact regarding Dr. Mullen's medical testimony, and since Plaintiff's claim that the CSA is unconstitutional is far too attenuated from the graduation reduction of his Vicodin prescription, Plaintiff lacks standing to proceed on his claim, and it is DISMISSED.

**IT IS SO ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 49) is GRANTED.

2. Plaintiff's claims are DISMISSED.

3. The Clerk of Court is instructed to enter judgment in favor of Defendants, and close this case.

Dated this 14th day of September, 2020.

*[signature]*
Honorable Cindy K. Jorgenson
United States District Judge